UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
VIVIAN MARITZA TRIANA MARIN, *et al.*,

                              Plaintiffs,          **OPINION & ORDER**

     v.                                                 23-CV-6498
                                                                             (Gujarati, J.)
MARC J. PAYNTER, *et al.*,                         (Marutollo, M.J.)

                              Defendants.

------------------------------------------------------------------------x

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       This action arises out of a motor vehicle accident that occurred on October 11, 2022, on the Whitestone Expressway in Queens, New York. *See* Dkt. No. 17. Plaintiffs Vivian Maritza Triana Marin, Sebastian Arroyave Penagos, and Daniel Arroyave Penagos claim that they sustained physical and emotional injuries as a result of the accident. *See id.* Defendants Marc J. Paynter and Transport Marc Paynter Inc. argue that the accident "was staged, as dashcam video shows the plaintiff driver Vivian Maritza Triana Marin abruptly slamming [on] the brakes in the left lane of the Whitestone Expressway without any apparent reason." Dkt. No. 79 at 1.[1] Defendants have asserted a counterclaim for fraud. *See* Dkt. No. 29 at 11.

       Discovery in this case is closed. *See* Minute Entry and Order dated August 6, 2025. Currently pending before this Court is Defendants' motion to preclude Dr. Roman Shulkin from serving as an expert witness in this matter, as well as for sanctions against Plaintiffs. *See* Dkt. Nos. 79-81. For the reasons explained below, the Court grants Defendants' motion to preclude Dr. Shulkin from serving as an expert witness. The Court denies Defendants' motion for monetary sanctions, without prejudice to renewal, as discussed further below.

---

[1] Page citations are to the ECF-stamped pages unless otherwise noted.

I. **Relevant Factual and Procedural Background**

The Court presumes familiarity with the procedural posture and factual background of this case and recites only the facts relevant to the instant motion.

On May 23, 2025, Defendants filed a motion for sanctions pursuant to Fed. R. Civ. P. 37 in light of Plaintiffs' collective failure to appear at their May 22, 2025 independent medical examinations, which were to have been conducted by Defendants' proposed expert, Dr. Neil Roth. *See* Dkt. No. 64 at 1. Defendants also sought sanctions pursuant to Fed. R. Civ. P. 37 as it pertains to a supplemental Fed. R. Civ. P. 26 disclosure served by Plaintiffs, namely, regarding "several new medical providers which had never been previously disclosed: Mark McMahon, MD; Leonid Reyfman, MD; Irving Friedman, MD; Alan Greenfield, MD; and Medical Imaging Consulting Services." *Id.* at 2. Defendants noted that these disclosures "occurred after plaintiffs' depositions were completed"; they "did not include any medical records and did not include any authorizations." *Id.*

On May 28, 2025, the Court held a status conference. *See* Minute Entry and Order dated May 28, 2025. The Court extended Plaintiffs' deadline to serve their amended Fed. R. Civ. P. 26(a)(2)(B) disclosures for Mark McMahon, MD; Leonid Reyfman, MD; Irving Friedman, MD; and Alan Greenfield, MD, on Defendants to June 9, 2025.[2] *Id.* The Court noted that "[f]ailure to timely serve the <u>fully compliant</u> disclosures by June 9, 2025 will render those experts precluded." *Id.* (emphasis in original). The Court also ordered the parties "to meet and confer to resolve no-show fees imposed by Dr. Roth as a result of Plaintiffs' failure to appear at the scheduled independent medical examinations." *Id.*

---

[2] During the May 28, 2025 conference, Plaintiffs withdrew the entity "Medical Imaging Consulting Services" as a proposed expert. *See* Minute Entry and Order dated May 28, 2025.

2

On June 10, 2025, the parties filed a joint status letter. *See* Dkt. No. 67. In the joint status letter, Defendants reported that Plaintiffs did not serve any expert disclosure for Dr. Mark McMahon; Dr. Irving Friedman; or Dr. Leonid Reyfman, respectively. *See id*. at 1. Plaintiffs reported serving portions of expert disclosures from Dr. Alan Greenfield, but only with respect to Plaintiffs Vivian Marin and Daniel Penagos. *See id*. Plaintiffs also served on Defendants expert disclosures regarding Dr. Roman Shulkin, who had not previously been identified. *See id.*

In response to the June 10, 2025 joint status report, and consistent with its May 28, 2025 Order, the Court precluded Dr. McMahon, Dr. Friedman, and Dr. Reyfman from testifying or offering any expert opinion in this matter, from motion practice through trial. *See* Text Order dated June 10, 2025. The Court also precluded Dr. Greenfield from testifying or offering any expert opinion in this matter, from motion practice through trial, as to Plaintiff Sebastian Penagos. *See id.*[3]

Additionally, the Court ordered the following:

> Plaintiffs provide no explanation as to why Dr. Shulkin was not identified throughout discovery, including why he was not identified at the May 28, 2025 conference. Plaintiffs are ordered to SHOW CAUSE by June 11, 2025 as to why Dr. Shulkin shall not be precluded from testifying or offering any expert opinion in this matter, from motion practice through trial.

*Id*.

---

[3] The Court further noted that

> Plaintiffs [] did not provide Defendants with a list of exhibits that will be used to summarize or support Dr. Greenfield's opinions; did not provide a list of Dr. Greenfield's publications from the past 10 years; did not provide a list of cases in which Dr. Greenfield testified in the previous [four] years; and did not include a statement of the compensation to be paid to them. Plaintiffs shall supplement their expert disclosures for Dr. Greenfield by June 11, 2025 and shall file a letter demonstrating that such service was made by the same date.

Text Order dated June 10, 2025.

3

On June 11, 2025, Plaintiff filed a letter indicating that expert disclosures related to Dr. Shulkin and Dr. Greenfield were served on that date. *See* Dkt. No. 68. As set forth in Plaintiff Marin's disclosure, Plaintiff Marin intended to call Dr. Shulkin "as a medical expert in the field of pain management." Dkt. No. 79-1. Per Plaintiff Marin, Dr. Shulkin's opinion will be based on, *inter alia*, his "physical examinations of the plaintiff [Marin]." *Id.* ¶ 3. Plaintiffs did not identify Dr. Shulkin as an expert for Plaintiffs Sebastian Arroyave Penagos or Daniel Arroyave Panagos. *See id.* ¶¶ 1, 4.

In response, the Court issued an Order stating that "Plaintiffs have failed to show cause - or even address - why Dr. Shulkin shall not be precluded from testifying or offering any expert opinion in this matter, from motion practice through trial." Text Order dated June 11, 2025. The Court ordered Plaintiffs to supplement their response to the Court's June 10, 2025 Text Order by June 12, 2025 at 5:00 p.m. and reminded Plaintiffs' counsel that failure to comply with Court orders will result in sanctions. *See id.*

Later in the day on June 11, 2025, Plaintiffs filed a second letter explaining that, while Dr. Shulkin's name had not previously been identified in any expert disclosure ahead of the expert discovery deadline, Dr. Shulkin was "an employee of LR Medical P.C., whose owner, Dr. Leonid Reyfman, M.D., was timely disclosed." Dkt. No. 69. Plaintiffs claimed that they put Dr. Reyfman's name in their supplemental Rule 26 disclosures "with the intent to provide the actual expert's name when [counsel] bec[a]me aware of it." *Id.*

On the evening of June 11, 2025, the Court ordered that, in light of Plaintiffs' representations in Dkt. No. 69, the Court would not issue sanctions or preclude Dr. Shulkin "at this time." *See* Text Order dated June 11, 2025.

4

On June 13, 2025, Defendants moved for sanctions related to "no-show fees" totaling $3,000, associated with Plaintiffs' failure to appear for independent medical examinations before Dr. Neil Roth, Defendants' expert. *See* Dkt. No. 70. Following motion practice (Dkt. Nos. 71-73), the parties resolved the "no-show fees" issue and stated that "payment has been remitted to Dr. Roth." Dkt. No. 73.

On August 1, 2025, Defendants requested a pre-motion conference related to Plaintiffs' reliance on purported expert Dr. Shulkin. Dkt. No. 74. Defendants reported that,

> [d]uring the July 31, 2025 deposition of Dr. Shulkin, it was revealed that he did not physically examine [Plaintiff Marin] in any way, nor did he even meet her, and that his report was based on the notes of an examination performed by a nurse practitioner. Nowhere in the expert disclosure was this stated, in fact, it specifically noted that Dr. Shulkin had examined [Plaintiff] Marin personally.

Dkt. No. 74 at 1. Further, Defendants reported that although Plaintiffs' expert disclosure for Dr. Shulkin stated that he had not testified in the previous four years, his deposition testimony in this matter indicated that he had testified at least once before in a deposition and "appeared confused as to whether other testimony before the Workers Compensation board constituted responsive testimony" for this purpose. *See id.* at 2. In response, Plaintiffs reported that a nurse practitioner had, in fact, examined Plaintiff Marin, rather than Dr. Shulkin. *See* Dkt. No. 75. Plaintiffs added that they had no prior knowledge of the nurse practitioner's examination and attached therewith the nurse practitioner's examination report and Dr. Shulkin's narrative report. *See id.*; Dkt. Nos. 75-1, 75-2.

Following a Court order, on August 13, 2025, Defendants filed their motion to preclude Dr. Shulkin from serving as an expert witness and for sanctions against Plaintiffs. *See* Dkt. No. 79; Minute Entry and Order dated August 6, 2025. Plaintiffs filed their response on August 20, 2025. *See* Dkt. No. 80. Defendants filed a reply on August 25, 2025. *See* Dkt. No. 81.

5

## II. Discussion

### A. Preclusion of Dr. Shulkin

Defendants seek to preclude Dr. Shulkin from testifying or offering any expert opinion in this matter, from motion practice through trial. *See* Dkt. No. 79. In short, Defendants argue that "[t]he revelation that Dr. Shulkin never examined [Plaintiff Marin] and based his opinions on someone else's examination notes [was] in direct contradiction with essentially every aspect of [Plaintiffs' Fed. R. Civ. P.] 26 (a)(2) disclosure." *Id.* at 3. Significantly, both Dr. Shulkin's report and Plaintiffs' counsel's disclosure averred that Dr. Shulkin had personally examined Plaintiff Marin; Dr. Shulkin later testified that he had not. *See id.* Further, Dr. Shulkin's disclosures regarding his prior testimony omitted at least one instance in which he was deposed and ignored the potentially multiple times that he had testified in workers' compensation matters. *See id.*

In their response to Defendants' motion, Plaintiffs concede that Dr. Shulkin should be precluded from testifying or offering any expert opinion in this matter, from motion practice through trial. *See* Dkt. No. 80. Specifically, Plaintiffs acknowledged that there were indeed "material inaccuracies" in Dr. Shulkin's disclosures and reiterated that they learned that a nurse practitioner had examined Plaintiff Marin for the first time at Dr. Shulkin's deposition. *See id.* at 3. Plaintiffs state that they are "willing to consent to Defendants' request to preclude Dr. Shulkin's testimony and Plaintiffs will not use his opinion in any capacity in this matter." *Id*. Plaintiffs noted that they raised this stipulation with Defendants' counsel in an effort to avoid Defendants' motion for sanctions (discussed further below), but to no avail. *See id.*

In their reply, Defendants assert that Plaintiffs have conceded that Dr. Shulkin should be precluded from serving as an expert witness in any capacity. Dkt. No. 81.

6

Given Plaintiffs' concession, and given the egregious material discrepancies between his testimony and report, the Court grants Defendants' motion to preclude Dr. Shulkin from testifying or offering any expert opinion in this matter, from motion practice through trial.

**B.     Sanctions**

Defendants also request that the Court impose sanctions against Plaintiffs pursuant to Fed. R. Civ. P. 37, as well as based on the Court's inherent power to manage its cases. *See* Dkt. No. 79. Defendants argue that sanctions are appropriate because of Plaintiffs having "violated multiple court directives that they serve fully compliant [Fed. R. Civ. P.] 26 (a)(2) disclosures." *Id.* at 8. Defendants contend that dismissal is appropriate; in lieu of dismissal, "[D]efendants argue that monetary sanctions are warranted." *See* Dkt. No. 81 at 2-3. Defendants contend that "Dr. Shulkin's office charged defendants $3,000 in appearance fees alone, before even taking into account the cost of the court reporter and attorneys['] fees." *See id.* at 3.

        **i.     Legal Standard for Fed. R. Civ. P. 37(b) Sanctions**

Federal Rule of Civil Procedure 37(b)(2) authorizes courts to impose sanctions on parties that fail to comply with discovery orders. The rule provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). The Second Circuit has described the three purposes behind Rule 37 sanctions as follows:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

7

*See Gilead Scis., Inc. v. Safe Chain Sols. LLC*, No. 21-CV-4106 (AMD) (RER), 2023 WL 4991574, at *2 (E.D.N.Y. July 19, 2023), *report and recommendation adopted*, 2023 WL 5024696 (E.D.N.Y. Aug. 7, 2023) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

When considering a motion for sanctions, courts in this Circuit often evaluate four factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). These factors, however, are not exclusive, nor must each weigh against the non-compliant party for sanctions to be imposed. *See Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024) (citing *S. New England Tel. Co. v. Glob NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

While prejudice to the moving party may weigh heavily in favor of sanctions, it is not a prerequisite in every case. *See Brevard v. Schunk*, No. 18-CV-42 (BKS) (ML), 2020 WL 374563, at *5 (N.D.N.Y. Jan. 23, 2020) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129 (S.D.N.Y. 2016)). The Second Circuit and the Supreme Court have rejected a "no harm, no foul" standard, recognizing that sanctions under Rule 37 also serve broader purposes beyond addressing prejudice. *See Martinez v. City of New York*, No. 16-CV-79 (AMD) (CLP), 2018 WL 604019, at *22 (E.D.N.Y. Jan. 24, 2018) (quoting *S. New England Tel. Co.*, 624 F.3d at 148–49). Moreover, any sanction imposed must relate to the specific claim or issue addressed by the discovery order. *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991).

Courts have broad discretion to determine appropriate sanctions for discovery abuses and other litigation misconduct. *See Gilead Scis.*, 2023 WL 4991574, at *2. Sanctions may include,

8

among other remedies, deeming certain facts established, prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, striking pleadings, staying proceedings, dismissing the action, entering a default judgment, or imposing monetary penalties. *See* Fed. R. Civ. P. 37(b)(2); *see also Gilead Scis.*, 2023 WL 4991574, at *2-*3. Where "the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation) . . . or to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

Finally, even in the absence of a discovery order, a court may impose sanctions for discovery misconduct under its inherent authority to manage its own affairs. *See id.* at 106-07; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (citation omitted)).

### ii. Dismissal or Monetary Sanctions

As an initial matter, by precluding Dr. Shulkin, the Court has effectively sanctioned Dr. Shulkin, as Plaintiffs will not be able to rely on Dr. Shulkin in testifying or offering any expert opinion in this matter, from motion practice through trial. Nonetheless, Defendants seek dismissal of Plaintiffs' action, or alternatively, monetary sanctions as well.

Dismissal, however, is a "drastic remedy" that should be used only on "rare occasions," *Spencer v. Doe*, 139 F.3d 107, 114 (2d Cir. 1998) (citing *Colon v. Mack*, 56 F.3d 5, 7 (2d Cir. 1995)), that is, "only in extreme situations," *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759,

9

764 (2d Cir. 1990). Dismissal under Fed. R. Civ. P. 11 is "reserved for the rare case involving extreme misbehavior by the offending party, such as fraud, contempt, and willful bad faith." *Gurvey v. Cowan, Leibowitz & Latman, P.C.*, No. 06-CV-1202 (LGS) (HBP), 2015 WL 5472893, at *6 (S.D.N.Y. Sept. 17, 2015).

Here, Defendants have not moved for sanctions under Fed. R. Civ. P. 11; rather the dismissal sought is pursuant to Fed. R. Civ. P. 37. In any event, at this stage of the litigation, dismissal is not warranted. While Plaintiffs' counsel have made myriad errors throughout this litigation, their actions related to Dr. Shulkin do not appear to constitute fraud, contempt, or willful bad faith.

With respect to monetary sanctions, Defendants seek, *inter alia*, fees associated with "Dr. Shulkin's office charg[ing] defendants $3,000 in appearance fees alone, before even taking into account the cost of the court reporter and attorneys['] fees." Dkt. No. 81 at 3. As Defendants note, "[t]his is all for a disclosure which was so deficient and misleading that [P]laintiffs now themselves are willing to consent to preclusion without arguments in opposition." *Id.*

In an effort to avoid additional unnecessary litigation, the Court directs the parties to further confer on this issue. Similar to the resolution of Defendants' prior motion for sanctions related to "no-show fees" associated with Plaintiffs' failure to appear at Dr. Roth's independent medical examination (Dkt. No. 70), the parties shall meet and confer to determine whether a resolution can be reached regarding the attorneys' fees and costs associated with Defendants' work involving Dr. Shulkin, including the alleged $3,000 in appearance fees. Should a resolution not be reached, the Court will promptly direct Defendants to renew their motion by letter, attaching therewith documentary support of their request for sanctions. As a result, the Court denies Defendants'

motion as to monetary sanctions, without prejudice to renewal, should the parties be unable to reach a resolution.

### III.     Conclusion

Accordingly, Defendants' motion is granted in part and denied in part. Plaintiffs are precluded from relying on Dr. Shulkin in testifying or offering any expert opinion in this matter, from motion practice through trial. The parties shall file a joint status report by September 30, 2025, indicating whether they have reached an agreement regarding Defendants' request for monetary sanctions. The final date to take the first step in dispositive motion practice, if any, shall be October 7, 2025.

Dated: Brooklyn, New York
       September 23, 2025                              **SO ORDERED**.

                                                       ____/s/ Joseph A. Marutollo_____
                                                       JOSEPH A. MARUTOLLO
                                                       United States Magistrate Judge