UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VIVIAN MARITZA TRIANA MARIN, SEBASTIAN
ARROYAVE PENAGOS, and DANIEL ARROYAVE
PENAGOS,

                        Plaintiffs,

                   v.

MARC J. PAYNTER and TRANSPORT MARC
PAYNTER INC.,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM &
ORDER**

23-CV-6498
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiffs Vivian Maritza Triana Marin, Sebastian Arroyave Penagos, and Daniel Arroyave

Penagos (collectively, "Plaintiffs") bring this diversity[1] action against Defendants Marc J. Paynter

and Transport Marc Paynter Inc. (collectively, "Defendants"), in connection with a rear-end motor

vehicle accident that occurred on the Whitestone Expressway in Queens, New York on October

11, 2022 ("the Accident").

The parties consented to the undersigned's jurisdiction in this matter.  Dkt. Nos. 92, 93.

Plaintiffs now move for summary judgment on the issue of liability pursuant to Federal Rule of

Civil Procedure 56.  Dkt. No. 97.  Defendants move for summary judgment with respect to liability,

Plaintiffs' failure to meet the no-fault serious injury threshold, and their counterclaim for fraud.

Dkt. No. 96.

For the reasons set forth below, Plaintiffs' summary judgment motion on liability is denied;

Defendants' summary judgment motion on liability is granted; and Defendants' summary

---

[1] The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).  Plaintiffs are citizens
of Nassau County, New York.  Dkt. No. 17 ¶ 2-4.  Defendant Marc J. Paynter is a citizen of Napierville,
Quebec, Canada, and Defendant Transport Marc Paynter Inc. is a Canadian corporation.  *Id.* ¶¶ 5-7.  The
amount in controversy exceeds $75,000.  *Id.* ¶ 11.

judgment motion on their counterclaim for fraud is denied.[2]

## I.   <u>Background</u>

### A.   **Factual Background**

#### 1.   **The Accident**

The following facts, taken from the parties' respective Local Civil Rule 56.1 statements of fact and relevant portions of the record, are undisputed unless otherwise noted.[3] The Court also references a dashcam video footage ("the Video") filed with Defendants' motion. *See* Dkt. No. 96-4.[4] The Video is the dashcam video footage taken from the dashboard of Defendants' vehicle. Dkt. No. 96-2 ¶ 3; Dkt. No. 96-4; Dkt. No. 96-36 at 34. There is no dispute as to the accuracy of

---

[2] Jessica Silver, a judicial intern who is a second-year law student at Seton Hall University School of Law, is gratefully acknowledged for her assistance in the research of this Memorandum and Opinion.

[3] "Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, No. 12-CV-6383 (PKC) (SIL), 2025 WL 948111, at *1 n.2 (E.D.N.Y. Mar. 28, 2025). "Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein." *Id.* "Where relevant, the Court may cite directly to an underlying document," but "where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such facts undisputed." *Id.* (citing Loc. Civ. R. 56.1(c)-(d); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sep. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.")); *see also Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-CV-500E(M) (JTE), 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd*, 49 F. App'x 356 (2d Cir. 2002))); *Cemetery Workers Supplemental Pension Fund by Alladeen v. Lutheran All Faiths Cemetery*, No. 19-CV-6897 (RPK) (RML), 2021 WL 7908022, at *1 (E.D.N.Y. Sep. 9, 2021) ("Where . . . a party opposing summary judgment fails to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." (internal quotation marks and citation omitted)).

[4] Due to limitations regarding uploading videos on ECF, only a cover sheet identifying the Video is docketed at Dkt. No. 96-4. Defendants, however, provided the Video to the Court and Plaintiffs as part of its motion papers and the Video is fully a part of the record. The Court is in possession of the actual Video and it is available to the public.

the Video; indeed, both parties cite to the Video in support of their respective summary judgment motions. Dkt. No. 96-4; Dkt. No. 98 at 19 (citing to the Video); Dkt. No. 98-11 (submitting a still image from the Video).

The Accident occurred on the Whitestone Expressway in Queens, New York, on October 11, 2022, when there was a collision between Daniel Penagos's Subaru vehicle, operated by Marin ("Plaintiffs' vehicle"), and Transport Marc Paynter Inc.'s Peterbilt tractor-trailer ("Defendants' vehicle"), operated by Paynter while acting in the scope of his employment for Transport Marc Paynter Inc. *See* Dkt. No. 97-3 ¶ 1-5, *see also* Dkt. No. 17. Plaintiffs and an unidentified non-party[5] were passengers in Plaintiffs' vehicle. Plaintiffs were unable to identify the aforementioned non-party passenger's name, address, or phone number. *See, e.g.*, Dkt. No. 96-7 at 54-57; Dkt. No. 97-6 at 53-54; Dkt. No. 96-8 at 67-70. Paynter was the driver and sole occupant of Defendants' vehicle. *See generally* Dkt. No. 96-8 at 86; Dkt. No. 96-30 ¶ 3; Dkt. No. 96-39 ¶ 3; Dkt. No. 96-36 at 18. Immediately prior to the Accident, both vehicles were driving in the left lane, and Paynter testified that he moved to the left lane to avoid traffic merging onto the highway. *See* Dkt. No. 96-5 at 20:20-22.

The Accident occurred when Defendants' vehicle contacted the rear bumper of Plaintiffs' vehicle. *See* Dkt. No. 97-3 ¶ 9; Dkt. No. 100-1 ¶ 9. Marin testified that she was traveling at the posted speed limit of fifty-five miles per hour prior to the Accident, and that she decelerated by removing her foot from the accelerator prior to impact. *See* Dkt. No. 97-6 at 76:19-23, 80:9-14. Plaintiffs allege that Defendants' vehicle was "overtaking cars on the right while remaining in the left lane." Dkt. No. 97-3 at 3 ¶ 24. Defendants acknowledge that Defendants' vehicle was in the

---

[5] Sebastian Arroyave Penagos testified that the non-party was an unidentified male worker from an unidentified company. *See* Dkt. No. 96-7 at 54-57; Dkt. No. 97-6 at 53-54; Dkt. No. 96-8 at 67-70.

left lane but contend that the Video shows that other vehicles were passing Defendants' vehicle on the right.  Dkt. No. 100-1 at 4 ¶ 24; *see also* Dkt. 96-4.[6]

In her deposition, Marin could not recall or identify from the Video why she was braking, but stated:

> [I]f I am braking, that means that something has to be happening because I am a driver, I don't do that.  Maybe there was a hole there or something, something had to happen, but what I do know is that the other car had to be coming at a high speed due to the way he hit me.

Dkt. No. 97-6 at 95:11-21.  Sebastian Penagos and Daniel Penagos both testified that they were unaware of why Marin hit the brakes.  *See* Dkt. No. 96-8 at 93:12-13 (Daniel Penagos stating that he did "not understand what happened that day"); Dkt. No. 96-9 at 73:8-10 (Sebastian Penagos stating that he did not know why Marin hit the brakes).

Paynter testified that he noticed Plaintiffs' vehicle "speeding up and slowing down" prior to the Accident.  Dkt. No. 96-5 at 23:18-19.  Regarding the "behavior of [Plaintiffs' vehicle] as it was driving down the road," Paynter stated that Plaintiffs' vehicle was "just moving with traffic." *Id.* at 24:25; 25:2.  Paynter further explained that prior to the Accident there was nothing in the lane ahead of Plaintiffs' vehicle because traffic had cleared.  *See id.* at 32:11-14 (Q: "Around the time that the other vehicle braked shortly before the accident happened, was there anything in front of the other vehicle in the lane that the two of your vehicles were in?"  A: "No."); *id.* at 32:24-25, 33:1 (Paynter noting that "prior to the accident, the traffic in front of that vehicle in the left lane just – they all disappeared, basically").  Paynter noted that prior to the Accident, he tried to keep a distance of "quite a few car lengths" from Plaintiffs' vehicle.  Dkt. No. 96-5 at 30:8-9.  Paynter

---

[6] Plaintiffs also allege that Paynter, though he claimed he did not recall seeing it, acknowledged a sign which states, "No trucks, buses, trailers left lane," near the site of the Accident.  *See* Dkt. 96-36 at 35-36. According to Defendants, however, Paynter only acknowledged a photograph of the sign from Google, dated September 2022, which may or may not have been posted or covering the area in question at the time of the Accident.  *See* Dkt. No. 100-1.

added that "as soon as [Plaintiffs] hit their brakes," Paynter hit his brakes, which he described as "an automatic reaction." *Id.* at 30:21-22. Defendants also assert that the Video corroborates an unforeseeable sudden stop by Plaintiffs' vehicle, given the clear lane ahead of Plaintiffs. *See* Dkt. No. 96-4.

A non-party witness to the Accident, Grant Seymour Bryan, a driver and owner of a small trucking company, was driving his personal vehicle in the center lane with his fiancé prior to the Accident. Dkt. No. 96-6 at 12:19, 12:25, 13:8. Bryan recalled that prior to the Accident, there was not any traffic. *Id.* at 10-16. Bryan testified that he saw Plaintiffs' vehicle's brake light come on, that Plaintiffs' vehicle "just stopped in the lane," and that Defendants' vehicle "hit [Plaintiffs] from behind." *Id.* at 17:8-13. Following the Accident, Bryan pulled over to check his own car; when Bryan checked on the passengers involved in the Accident, Bryan claims that Marin stated that she "stepped on the brakes instead of the gas," while the other two Plaintiffs said nothing. *Id.* at 18:6-7, 18:12-14. Bryan testified that "there were absolutely nothing in front of" Plaintiffs and that he could not identify a reason Marin would have hit the brakes "full stop." *See id*. at 17:22-24, 19:13-14 (describing the brake as a "very hard brake[]. It was a full stop brake[].").

The collision caused rear-end damage and a blown-out window to Plaintiffs' vehicle, and Marin described the impact as "very hard." *See* Dkt. No. 96-5 at 29:18-19; Dkt. No. 97-6 at 85:12. Plaintiffs allege that they sustained serious injuries as defined under New York Insurance Law §§ 5102(d) and 5104(d) as a result of the collision. Dkt. No. 96-28 at 26.

### 2.    Prior State Court Litigation

On March 21, 2024, Plaintiffs' no-fault insurance carrier, LM General Insurance Company, also known as "Liberty Mutual," filed an action in the Supreme Court of the State of New York, Nassau County, against Plaintiffs and Plaintiffs' healthcare providers, seeking a declaratory

judgment that the Accident was "not the product of a covered event as it was the product of staged and/or intentional event," which was "perpetrated by [Plaintiffs] with the intent to obtain insurance benefits that [Plaintiffs] would not otherwise be entitled to receive."  Dkt. No. 96-23 ¶ 3.

As part of that action, Liberty Mutual averred that since the Accident, Liberty Mutual "has suffered with an onslaught of No-Fault claims and has to defend each of its denials separately and in multiple forums, prompting the present declaratory action."  Dkt. No. 32 ¶ 22, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024, (N.Y. Sup. Ct. May 7, 2024).  Several of Plaintiffs' no-fault claims, submitted by Plaintiffs' healthcare providers, proceeded to arbitration.  *Id.* ¶ 23.  Four arbitration decisions were issued in February 2024 (the "Arbitration Decisions") by an arbitrator, Joshua Adler, "while countless more claims await adjudication."  *Id.* ¶¶ 23-24.  In each Arbitration Decision, the arbitrator

> credited the <u>uncontested</u> affidavit of respondent's [Liberty Mutual's] investigator . . . in which he discussed, inter alia: (a) video footage of the [Accident], (b) conflicting and 'curious' EUO [Examination Under Oath] testimony, and (c) indicia of prior accidents associated with the insured, believed to be 'staged' and/or intentionally caused losses . . . .  Applicant [Plaintiffs' healthcare provider] – which 'stands in the shoes' of its assignor [Plaintiffs] – produced no evidence to the contrary.

*Id.* ¶ 25; Dkt. No. 48, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024, (N.Y. Sup. Ct. May 7, 2024).  The Arbitration Decisions concluded that "the alleged underlying [Accident] was 'staged' and/or intentionally caused."  *Id.* ¶ 25; Dkt. No. 48, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024, (N.Y. Sup. Ct. May 7, 2024).

Defendants have filed copies of the Arbitration Decisions in support of Defendants' summary judgment motion.  Dkt. No. 96-2 ¶ 25; *see also* Dkt. No. 96-26.[7]

---

[7] Defense counsel's affidavit states that the Arbitration Decisions are dated January 30, 2024 and February 27, 2024.  Dkt. No. 26-2 ¶ 25.  The arbitration hearing was held on January 30, 2024, and the arbitration decisions were issued in February 2024 (three on February 6, 2024, and one on February 29, 2024).  Dkt. No. 96-26.  A comparison of the Arbitration Decisions filed in this action (Dkt. No. 96-26), and those filed

Plaintiffs were ultimately discontinued from the prior state court litigation without prejudice and, thus, there was no final adjudication on the merits.  *See* Dkt. No. 118, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Dec. 29, 2025) (Stipulation of Partial Discontinuance regarding Plaintiffs); Dkt. No. 121 at 4, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Feb. 5, 2026) (judgment not binding Plaintiffs because "Defendants, Daniel Arroyave Penagos, Vivian Maritza Triana Marin and Sebastian Arroyave Penagos . . . have been discontinued from the instant action," and the parties reached a "resolution . . . with regard to all of the remaining Defendants").

### B.    Procedural History

On August 30, 2023, Plaintiffs filed the Complaint.  *See generally* Dkt. No. 1.  On June 5, 2024, Plaintiffs filed the Amended Complaint.  Dkt. No. 17.  On August 26, 2024, Defendants answered the Amended Complaint, asserting several affirmative defenses and the counterclaim for fraud against Plaintiffs.  Dkt. No. 29.  Discovery closed on August 6, 2025.  Text Order, dated Aug. 6, 2025.

On January 30, 2026, Defendants filed their fully briefed motion for summary judgment against all Plaintiffs on the issue of liability, and in the alternative, on the issue of the serious injury threshold, as well as on Defendants' counterclaim for fraud.  Dkt. No. 96.  On the same date, Plaintiffs filed their fully briefed motion for partial summary judgment against all Defendants.  Dkt. No. 97.

---

in state court (Dkt. No. 48, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024, (N.Y. Sup. Ct. May 7, 2024)) reveal that they are the same.  Defendants' memorandum of law states that there were "at least five separate No-Fault Arbitrations."  Dkt. No. 96-27 at 30.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). Genuine disputes as to any material fact do not exist where:

> (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material).

*Lange v. Dep't of Educ. of N.Y.*, No. 17-CV-3443, 2018 WL 4636986, at \*2 (S.D.N.Y. Sep. 26, 2018) (Sullivan, J.) (first quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and then quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (first citing *Anderson*, 477 U.S. at 255; and then citing Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment)); *see also Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried" (quoting *Katz v.*

8

*Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984))).  "In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."  *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (citation omitted).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (citation omitted).  Neither "[c]onclusory allegations, conjecture, [nor] speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), nor a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are sufficient to establish a genuine dispute of material fact.  "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'"  *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980)).

## III.    Discussion

### A.    Defendants' and Plaintiffs' Motion for Summary Judgment on Liability

#### 1.    Legal Standard

In this action, the federal court sitting in diversity must apply New York substantive law. *Colon v. Linchip Logistics LLC*, 330 F.R.D. 359, 364 (E.D.N.Y. 2019) (first quoting *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); and then *Edwards v. Erie Coach Lines Co.*, 952 N.E.2d 1033, 1044 (N.Y. 2011)).  Accordingly, because the Accident occurred in Queens, New York, New York negligence law applies.  *Id.*

9

Under New York law, a plaintiff "seeking to prove a defendant's negligence must show '(1) the existence of a duty . . . ; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023) (citing *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)); *see also Mora v. United States*, 643 F. Supp. 3d 314, 322 (E.D.N.Y. 2022) (Bulsara, J.) ("Plaintiffs' claims sound in negligence, and they must establish: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" (citation omitted)).

"The symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability." *Vogel v. W. Mountain Corp.*, 470 N.Y.S.2d 475, 476 (1983) ("Whether a duty exists presents a question of law to be determined by the court based upon the facts and circumstances of the case."). A "defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Dooley*, 83 F.4th at 162 (citing *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016)).

In New York, the Vehicle and Traffic Law ("VTL") defines the duties of motorists, and "[a] violation of the [VTL] constitutes negligence as a matter of law." *Id.* at 163 (citing *Desio v. Cerebral Palsy Transp., Inc.*, 994 N.Y.S.2d 681, 682 (N.Y. App. Div. 2014)). New York law "impose[s] a duty upon drivers to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." *Vaselli v. United States*, No. 12-CV-6221, 2014 WL 4961421, at *5 (E.D.N.Y. Oct. 3, 2014) (Bianco, J.) (quoting *Goldstein v. United States*, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998)). "This longstanding duty requires drivers to maintain a reasonably safe rate of speed, have the automobile under reasonable control, to keep a proper lookout under the circumstances then existing to see and be

10

aware of what was in their view, and to use reasonable care under the circumstances to avoid an accident." *Id.* (quoting *Goldstein*, 9 F. Supp. 2d at 186).

"When a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury." *Id.* (quoting *Mauro v. Costco Wholesale Corp.*, No. 09-CV-1391 (VVP), 2013 WL 3816731, at *4 (E.D.N.Y. July 22, 2013)); *see also Mahoney v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-4127 (MKB), 2025 WL 2772949, at *5 (E.D.N.Y. Sep. 26, 2025) ("[A] violation of a [s]tate [or federal] statute that imposes a specific duty constitutes negligence *per se*." (quoting *Espinoza v. Foundry Workers LLC*, 792 F. Supp. 3d 344, 352 (E.D.N.Y. 2025)). VTL § 1129(a) states that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." N.Y. Veh. & Traf. Law § 1129(a). This provision imposes a duty on the driver of a rear vehicle to "maintain a reasonably safe rate of speed and control over [one's] vehicle, and to exercise reasonable care to avoid colliding with the other vehicle." *Hong v. Maher,* No. 02-CV-7825 (RWS), 2004 WL 771127, at *2 (S.D.N.Y. Apr. 13, 2004) (quoting *Chepel v. Meyers,* 762 N.Y.S.2d 95, 97 (N.Y. App. Div. 2003)).[8]

---

[8] "New York courts have long recognized that '[a] rear[-]end collision with a stopped or stopping vehicle creates a *prima facie* case of liability with respect to the operator of the rearmost vehicle.'" *Turansky-Frances v. United States*, No. 17-CV-2548 (JS) (ARL), 2022 WL 991979, at *8 (E.D.N.Y. Mar. 31, 2022) (quoting *Comba v. United States*, 535 F. Supp. 3d 97, 105 (E.D.N.Y. 2021)). The defendant must provide "a non-negligent explanation of the collision in order to overcome the inference of negligence and defeat the motion for summary judgment" to escape liability in such a case. *Id.* (quoting *Luizzi v. Pro Transp. Inc.*, No. 02-CV-5388, 2009 WL 252076, at *4 (E.D.N.Y. Feb. 2, 2009)). "Accepted examples of 'non-negligent explanations' include mechanical failure of the rearmost vehicle, a sudden stop of the lead vehicle, and unavoidable skidding on wet pavement." *Id.* (citing *Comba*, 535 F. Supp. 3d at 106); *see also Lhotan v. Cahill*, No. 22-CV-7681 (VB), 2025 WL 2051625, at *7 (S.D.N.Y. July 22, 2025) ("a sudden stop of the

Importantly, the driver of the front vehicle also "has the duty not to stop suddenly or slow down without proper signaling so as to avoid a collision." *Chepel*, 762 N.Y.S.2d at 97 (citations omitted). Establishing that a defendant violated one of the "rules of conduct" established by the VTL is sufficient to establish a presumption that he was behaving negligently, and the burden of proof shifts away from the plaintiff. *See Vaselli*, 2014 WL 4961421, at *5 (holding that the VTL "establishes rules of conduct that must be obeyed by motorists and pedestrians, and a violation of the VTL constitutes negligence *per se*" (citations omitted)).

### 2.    Analysis

In this action, the objective testimonial and video evidence demonstrates that *Plaintiffs' vehicle* is the sole proximate cause of the Accident.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 216 (E.D.N.Y. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)), *aff'd sub nom.*, *Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016). The "record" can include a "dashboard videotape." *Id.* (quoting *Scott*, 550 U.S. at 378). "Although on summary judgment the evidence must be viewed in the light most favorable to Plaintiffs as the non-moving parties, when there is reliable objective evidence—such as a recording—the evidence may speak

---

vehicle ahead" is a non-negligent explanation that may rebut the presumption of negligence). But "[c]onclusory allegations of a sudden and unexpected stop are insufficient" to do so. *Moskovitz v. Dean*, No. 99-CV-6085 (TPG), 2001 WL 1442674, at *1 (S.D.N.Y. Nov. 15, 2001); *see also Randhawa v. Otero*, No. 22-CV-10479 (KMK), 2024 WL 4150335, at *6 (S.D.N.Y. Sep. 11, 2024) (collecting cases regarding foreseeable and unforeseeable stops in rear-end collision cases). "What matters . . . is that Defendants put forward some evidence of a non-negligent explanation for the collision, which suffices to defeat summary judgment." *Randhawa*, 2024 WL 4150335, at *6; *cf. Espinoza v. Foundry Workers LLC*, 792 F. Supp. 3d 344, 352 (E.D.N.Y. 2025) (granting summary judgment where the defendants "fail[ed] to point to any evidence in the summary judgment record . . . to suggest that Plaintiff abruptly changed speeds, thereby causing an accident").

12

for itself." *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012). "Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007).

In *Scott v. Harris,* 550 U.S. 372 (2007) (Scalia, J.), the United States Supreme Court considered a motion for summary judgment in a case in which the respondent alleged the use of excessive force during a high-speed car chase. The Supreme Court explained that, in deciding a summary judgment motion, courts "are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Id.* at 378 (citation omitted). The Supreme Court noted, however, "an added wrinkle in this case: existence in the record of a videotape capturing the events in question." *Id.* In *Scott*, contrary to the respondent's position that he "remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns[,] . . . [t]he videotape tells quite a different story." *Id.* at 379. Rather, "the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id.* at 380. Ultimately, the Supreme Court held that "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him," such "visible fiction" cannot be relied upon, and courts should "view[] the facts in the light depicted by the videotape." *Id.* at 380-81.

Here, like in *Scott*, the Video unequivocally shows that Plaintiffs' vehicle is the sole proximate cause of the Accident. Dkt. No. 96-4. As a threshold matter, and as noted above, there is no dispute as to the authenticity of the Video. Dkt. No. 98 at 19 (citing to the Video); Dkt. No.

13

98-11 (submitting a still image from the Video); *see also Scott*, 550 U.S. at 378 ("There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.").

Next, the Video blatantly contradicts Marin's claims that she had some legitimate reason to brake immediately prior to the Accident. Dkt. No. 96-4. Rather, as demonstrated from the stills from the uncontroverted Video, shown below, when Plaintiffs' vehicle's brake lights turned on, there were no cars, obstructions, potholes, construction, or any other hazards in front of Plaintiffs' vehicle. *Id.*

Indeed, for the first thirty-five seconds of the Video, Defendants' vehicle maintained a steady and safe distance from Plaintiffs' vehicle :



As shown thirty-five seconds into the Video, at 19:18:02, however, Plaintiffs' vehicle's brake lights are suddenly activated, for no apparent reason:

14



As shown below, one second later, at 19:18:03, Plaintiffs' vehicle fully brakes—even though, as noted above, there are no vehicles or obstacles of any kind in front of Plaintiffs' vehicle:



Then, one second later, at 19:18:04, the Video shows Plaintiffs' vehicle being hit by Defendants' vehicle. The lane in front of Plaintiffs' vehicle is completely open—again, no vehicles or obstacles of any kind:

15



GARMIN 11/10/2022 19:18:04 40.75187 -73.83610 52 KM/H

Here, the Video is indeed dispositive. No reasonable juror could believe that Plaintiffs' vehicle had a legitimate reason to stop suddenly when there is uncontested footage of a clear and open lane in front of Plaintiffs' vehicle. *See Zellner,* 494 F.3d at 371 ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

In addition to the Video, the deposition testimony further warrants summary judgment for Defendants. Plaintiffs provide no evidence or basis to explain why Plaintiffs' vehicle suddenly stopped so as to avoid a collision. *See Chepel*, 762 N.Y.S.2d at 97. As noted above, Marin could not recall or identify from the Video why she was braking, but said, that "[*m*]*aybe* there was a hole there or something, something had to happen." Dkt. No. 97-6 at 95:11-21 (emphasis added). But the Court need not rely on a "visible fiction" or rank speculation; the facts should be viewed "in the light depicted by the videotape." *Scott*, 550 U.S. at 380-81. Moreover, non-party witness Bryan further supported Defendants' interpretation of the Video, testifying that he could not understand why Marin would have acted the way she did. *See* Dkt. No. 96-6 at 17-18 ("[I]t was

16

just puzzling that they would just stop on the highway just like that for no reason at all. [I]t still puzzle[s] me to this day. There was absolutely nothing in that lane. Not even close. . . . We were going at regular speed on a . . . highway. There [were] no cars. There [were] no trucks. There [were] no cones. They just stopped in front of the truck for no reason at all. . . . And that's what caused the accident, if you ask me.").

At bottom, Plaintiffs' reliance on conclusory allegations and denials alone cannot establish triable issues of fact and defeat summary judgment on the issue of liability. *See Sanyer v. Kimberly Quality Care,* 971 F. Supp. 86, 89 (E.D.N.Y. 1997) ("'Purely conclusory allegations of discrimination, absent any concrete particulars,' will be insufficient to withstand a defendant's summary judgment motion." (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985))). While "an accident can have more than one proximate cause, and although it is generally for the trier of fact to determine the issue of proximate cause, it may be decided as a matter of law where only one conclusion may be drawn from the established facts." *Elusma v. Jackson,* 130 N.Y.S.3d 500, 502 (N.Y. App. Div. 2020); *see also Johnson v. Bryco Arms,* 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004) ("The issue of proximate cause is generally a question of fact for the jury, unless only one conclusion may be drawn from the established facts and the question of legal cause may be decided as a matter of law." (citation omitted)). The only reasonable conclusion which can be drawn here, in light of the objective Video and relevant deposition testimony, is that Plaintiffs' vehicle, not Defendants' vehicle, is the sole proximate cause of the collision. *See* Dkt. No. 96-4; *see also Gray v. Wackenhut Servs., Inc.*, 446 F. App'x 352, 354 (2d Cir. 2011) ("New York courts have not been reluctant to grant summary judgment where the record reflected that one party's negligence was the sole proximate cause of an accident." (citations omitted)); *Reyes v. United States*, No. 19-CV-5325 (KHP), 2021 WL 1639370, at *3 (applying New York substantive law and holding that

17

"where the record reflects that one party's negligence was the sole proximate cause of the accident, courts will grant summary judgment" (citations omitted)).[9]

Plaintiffs argue that "regardless of whether Plaintiffs['] vehicle's stop was 'sudden,' Defendants are responsible for the accident because they failed to maintain a safe distance and failed to stay in the lane designated for trucks." Dkt. No. 98 at 19. But Plaintiffs' argument fails. First, the Video clearly shows that Defendants did not violate VTL § 1129(a), because Defendants' vehicle maintained a steady and safe distance from Plaintiffs' vehicle from the beginning of the Video until Plaintiffs' sudden stop, a time period of approximately thirty-five seconds. *See Hong*, 2004 WL 771127, at *2 (describing VTL § 1129(a)). Second, even assuming *arguendo* that Defendants failed to stay in a lane designated for trucks, such a violation was not negligence *per se* because Plaintiffs failed to demonstrate that (1) any such violation caused the injury, (2) Plaintiffs were members of the class intended to be benefited by the statute, or (3) the statute is intended to protect against the very hazard that caused Plaintiffs' injury. *Vaselli*, 2014 WL 4961421, at *5 ("When a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury."). Indeed, VTL § 1621(a)(7) permits the New York Department of Transportation to "[o]rder signs erected directing

---

[9] This case is distinguishable from *Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023), in which the district court's decision to grant summary judgment was vacated and remanded because video evidence was insufficient to "blatantly contradict" Plaintiffs' testimony. In *Oakley,* the Second Circuit determined that the video at issue had quality and framing issues that limited its effectiveness. *See Oakley*, 2023 WL 3263618, at *2 (finding that "we cannot confidently match up Oakley's affidavit testimony with the video record for the purpose of determining whether the latter 'blatantly contradicts' the former"). Here, the Video clearly shows an empty lane ahead of Plaintiffs' vehicle prior to the Accident. Dkt. No. 96-4. It also shows Plaintiffs' brake lights coming on suddenly and without any interferences, and it shows the road free of any obstructions prior to the Accident. *Id.*

18

*slow-moving traffic*, trucks, buses, or specified types of vehicles to use a designated lane." N.Y. Veh. & Traf. Law § 1621(a)(7) (emphasis added). That the Transportation Department can direct larger vehicles and other "slow-moving traffic" to a designated lane, however, is immaterial to cause of the Accident.

Plaintiffs also contend that Defendants violated VTL § 1120 because Defendants stayed in the left lane, "even overtaking passenger vehicles traveling next to it." Dkt. No. 98 at 19. But driving in the left lane when overtaking a vehicle on the right is permitted under VTL § 1120(b). *See* N.Y. Veh. & Traf. Law § 1120(b) ("any vehicle proceeding at less than the normal speed of traffic . . . shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, *except when overtaking*" (emphasis added)).

Accordingly, Defendants' motion for summary judgment on the issue of liability must be granted because no reasonable jury, considering the evidence provided, could find in favor of Plaintiffs.

For the same reasons, Plaintiffs' motion for summary judgment on the issue of liability must be denied.

### B.    Defendants' Summary Judgment Motion on the Serious Injury Threshold

When summary judgment is granted for one party on a dispositive issue, further issues alleged by that party need not be addressed. *See Robinson v. Overseas Mil. Sales Corp.,* 21 F.3d 502, 511 n.8 (2d Cir. 1994) ("Because we affirm the district court's grant of summary judgment with respect to the individual federal defendants for want of personal jurisdiction, we need not address the question whether the individual federal defendants were properly served."). Because Defendants' motion for summary judgment is granted on the issue of liability, the undersigned need not address Defendants' argument regarding Plaintiffs' failure to meet the serious injury

19

threshold. *See Amaya v. Ballyshear LLC,* 17-CV-01596 (JS) (LGD), 2023 WL 2815615, at \*13 (E.D.N.Y. Jan. 13, 2023) ("Defendants assert additional arguments in their motions for summary judgment, including issues concerning damage, credibility, and determinations of imputing liability.  Based on the foregoing recommendation that the Court grant the motions for summary judgment as to the Section . . . 1981 and NYSHRL claims, 'the Court need not address [D]efendants' other arguments.'" (citing *Brady v. Top Ships Inc.,* No. 17-CV-4987, 2019 WL 3553999, at \*17 (E.D.N.Y. Aug. 5, 2019))), *report and recommendation adopted*, 2023 WL 2596031 (E.D.N.Y. Mar. 22, 2023).

### C.    Defendants' Summary Judgment Motion on Their Fraud Counterclaim

"Under New York law, a fraud claim must allege five elements: '(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages.'"  *E-Distributors, Inc. v. Woitkowski*, No. 25-CV-2337 (HG), 2026 WL 925829, at \*4 (E.D.N.Y. Apr. 6, 2026) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015)).  "At the summary judgment stage, a plaintiff must offer enough evidence to allow a reasonable jury to find by clear and convincing evidence that each of the elements is met."  *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 723 F. Supp. 3d 212, 226 (E.D.N.Y. 2024) (citation omitted).

Defendants' assertion of fraud relies first on evidence of litigation in state court between Plaintiffs and their no-fault insurance company, Liberty Mutual.  Defendants provided the complaint in which Liberty Mutual sought a declaratory judgment on the grounds that Plaintiffs staged the Accident to obtain insurance benefits.  *See* Dkt. No. 96-23 at 3.  This litigation alone, however, is not preclusive against Plaintiffs here because Plaintiffs were discontinued from that

case without prejudice and thus, there was no final adjudication on the merits. *See* Dkt. No. 118, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Dec. 29, 2025) (Stipulation of Partial Discontinuance regarding Plaintiffs); Dkt. No. 121 at 4 , *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Feb. 5, 2026) (judgment not binding Plaintiffs because "Defendants, Daniel Arroyave Penagos, Vivian Maritza Triana Marin and Sebastian Arroyave Penagos . . . have been discontinued from the instant action," and the parties reached a "resolution . . . with regard to all of the remaining Defendants"); *see also Kuriakose v. City of Mt. Vernon,* 41 F. Supp. 2d 460, 470 (S.D.N.Y. 1999) ("In order for *res judicata* or collateral estoppel to have a preclusive effect, there must have been a prior judgment on the merits rendered by a court of competent jurisdiction. As a dismissal without prejudice does not operate as an adjudication on the merits, the doctrines of *res judicata* and collateral estoppel do not apply here." (citations omitted)); *see also Ahmed v. United Parcel Serv., Inc.*, 25-CV-8801 (DEH) (HJR), 2026 WL 923142, at *3 n.3 (S.D.N.Y. Apr. 3, 2026) (holding that a dismissal without prejudice based on the parties reaching a settlement in principle is not a decision on the merits and the dismissal does not have *res judicata* effect (citing *Kuriakose*, 41 F. Supp. 2d at 470)), *report and recommendation adopted*, Dkt. No. 22 (S.D.N.Y. June 30, 2026).

Defendants also present evidence of the Arbitration Decisions between Plaintiffs' medical providers and Liberty Mutual in which claims were dismissed based on findings that the Accident was staged. *See* Dkt. No. 96-26. This arbitration record, alone, however, is also not preclusive against Plaintiffs, as Plaintiffs were not a party to the arbitration because they had assigned their rights in the arbitration proceedings to the medical providers. *See, e.g.*, Dkt. No. 96-26 at 3 (stating that the healthcare provider "stands in the shoes" of its assignor, Plaintiffs). The application of collateral estoppel requires that a party previously had a full and fair opportunity to litigate an

21

issue, which is not the case here given Plaintiffs' non-party status in the arbitration.  *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 14-CV-712 (SHS), 2026 WL 1370388, at *3 (S.D.N.Y. May 15, 2026) (holding that "[c]ollateral estoppel bars relitigation of an issue that has already been fully and fairly litigated in a prior proceeding," which requires that "the party had a full and fair opportunity to litigate the issue" (citations omitted)).  Plaintiffs were ultimately discontinued from the prior state court litigation without prejudice before there was a final adjudication on the merits, and accordingly, there was no full and fair opportunity to litigate.  *See* Dkt. No. 118, *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Dec. 29, 2025); Dkt. No. 121 at 4 , *LM Gen. Ins. Co. v. Penagos*, No. 604941/2024 (N.Y. Sup. Ct. Feb. 5, 2026).

> Further,  New York Insurance Law § 5106(e) states,
>
> [w]ith respect to an action for serious personal injury permissible under section five thousand one hundred four of this article, an award or decision of an arbitrator or master arbitrator or that is court rendered pursuant to subsection (c) of this section seeking no-fault reimbursement by or for medical providers, shall not be given collateral estoppel effect in any action or proceeding arising out of the same occurrence and shall not be admissible in any action or proceeding in actions seeking damages for bodily injuries, pain suffering, medical care and loss of wages as evidence of any facts.

N.Y. Ins. Law § 5106(e).  Thus, even had Plaintiffs been a party to the arbitration, the decision of the arbitrator under these circumstances cannot be given collateral estoppel effect here, even if admissible.

The remainder of Defendants' argument focuses on the Video and how Plaintiffs provided "suspicious testimony" in their examinations under oath in state court.  Dkt. No. 96-27 at 29-31; *see also* Dkt. No. 96-40 at 15-16 (arguing in reply that summary judgment should be granted for the counterclaim for fraud based on the "clear footage in the dashcam video," "coupled with the clear pattern of evidencing an intent to deceive from the coverage [examinations under oath]"); Dkt. No. 101 at 15-16 (same).  But none of the parties discuss any of the elements for fraud under

22

New York law.  *See* Dkt. No. 96-27 at 29-31; Dkt. No. 96-40 at 15-16; *see also* Dkt. No. 96-28 at 28-31; Dkt. No. 101 at 15-16.  At this juncture, the Court can only presume that genuine issues of material fact exist as to all elements of Defendants' fraud counterclaim under New York law.

Accordingly, Defendants do not meet the high standard for summary judgment on their fraud counterclaim.  Because there are genuine issues of material fact as to the elements of fraud, summary judgment is denied on Defendants' counterclaim for fraud.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' summary judgment motion on liability is denied; Defendants' summary judgment motion on liability is granted; and Defendants' summary judgment motion on their counterclaim for fraud is denied.

Regarding Defendants' sole remaining counterclaim for fraud, the parties shall file a joint proposed pretrial order by July 16, 2026.  An in-person final pre-trial conference is scheduled for July 20, 2026 at 3:30 p.m. in Courtroom 11A South of the Theodore Roosevelt United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, 11201.  Trial will commence at 9 a.m. on September 22, 2026 on Defendants' sole remaining counterclaim for fraud.

Dated:      Brooklyn, New York          **SO ORDERED.**
            July 10, 2026

                                          */s/ Joseph A. Marutollo*
                                         JOSEPH A. MARUTOLLO
                                         United States Magistrate Judge

23